IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

ROBERT L. COUSINS, JUDY A. COUSINS, pro se

     Plaintiff

     v.

TOWN OF TREMONT, TOWN MANAGER CHRISTOPHER SAUNDERS   ,
CEO JOHN LARSON,
TREMONT BOARD OF SELECTMEN MEMBERS MCKINZIE JEWETT, HOWDY
GOODWIN, KEVIN BUCK, JAMIE THURLOW, MICHAEL MANSOLILLI, JOHN DOE 1-5
Individually and in their official capacity

     Defendants

JURY TRIAL DEMANDED

FEDERAL QUESTION

## COMPLAINT

Now comes Plaintiffs Robert Cousins and Judy Cousins and hereby files this complaint

pursuant to 42 U.S.C. 1983 (equal protection), Fourteenth Amendment sec. 1 Equal Protection,

Procedural and Substantive Due Process, the First Amendment of the U.S.Constitution which

guarantees the "freedom of speech" and "the right of the people . . . to petition the Government

for redress of grievances." U.S. Constitution. Amend. I; see U.S. Constitution, Amend. XIV;

Maine Constitution Art. 1, sec. 4; *Cent. Me. Power Co. v. Pub.Utils.Comm'n, (1999) ME 119, p*

*8, 734 A.2d 1120* (stating that "[t]he First Amendment to the U.S. Constitution [is] applicable to

the state through the Due Process Clause of the XIV Amendment") Within the right to petition is

also found the right to access courts to seek de facto, (Amend V) redress of claimed injuries.



1

[U.S. Constitution Amd. 1, and the Maine Constitution Art. 1] *Mcdonald v. Smith* 472 U.S. 479, 482- 483 (1985); *Nader v. Maine Democratic Party 212 ME 57, para 20-25 41 A.3d 551.* "Where, as here, the administration action is quasi-legislative in nature, and apart from the question of corruption in its inception, its review by the judiciary is constitutionally limited to the determination of questions of law. That i.e., whether the action is within the powers delegated to the agency and, if so, whether the action is arbitrary capricious or unreasonable because not reasonably supported by substantial evidence." "The Court added that unless there is corruption in the inception, a Court may not inquire into anything except questions of law". *Texas State Board of Examiners in Optometry v. Carp* 388 S.W. 2d 409 (Tex. 1965).

## PARTIES

1. Robert L.Cousins and Judy A. Cousins, owners and operators of Cap'n Nemos Restaurant located in Bass Harbor, Maine, that was destroyed in a fire Dec 4, 2013.

2. Defendants: Town of Tremont, (Tremont) a municipality organized and existing under the laws of the State of Maine, located in Tremont, County of Hancock, State of Maine,with a physical address of 20 Harbor Drive, Route 102A, Bass Harbor, Maine, and a mailing address of PO Box 159, Bernard, Maine 04653, governed by a five person selectboard and has its principal place of business in Bass Harbor (Tremont) and a person under 42 sec 1983 et Seq.

3. Town Manager Chris Saunders 20 Harbor Drive, Rt. 102A, Bass Harbor, Maine 04653

4. Code Enforcement Officer John Larson 20 Harbor Dr. Rt. 102A, Bass Harbor, Maine 04653

5. Tremont Board of Selectmen (B.O.S) organized under the laws of the United States.

6. Selectman McKenzie Jewitt, 20 Harbor Drive, Route 102A, Bass Harbor, Maine 04653

7. Selectman Howdie Goodwin, 20 Harbor Drive, Route 102A, Bass Harbor, Maine 04653

8. Selectman Jamie Thurlow. 20 Harbor Drive, Route 102A, Bass Harbor, Maine 04653

9.  Selectman Michael Mansillilli, 20 Harbor Drive, Rt. 102A, Bass Harbor, Maine 04653

10.  Selectman Kevin Buck, 20 Harbor Drive,  Route 102A, Bass Harbor, Maine 04653

11.  Prior Town Manager John Doe

12. Prior Code Enforcement Officer John Doe

13.  John Doe 1-5

14.  Jointly and severably, all defendants, actors and co conspirators in their individual and official capacity acting under color of state law.

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

15.  We file this action to preserve our statute of limitations concerning the due process and recusal irregularities and consequent compensation the de facto take has encumbered.

16.  Defendants' M.R.Civ.P. 80K Complaint, Statement of Fact, Exhibit C states that the NOTICE OF VIOLATION notification date is August 9, 2018. [CV-19-070].

No such notice was received by the Plaintiffs and Defendants cannot show proof of any service.

17. On Sept. 27, 2018  a meeting took place in CEO Larson's Town  office at which time the NOTICE OF VIOLATION dated Sept. 27, 2018 was given to Plaintiffs. [EX 2(a)].  Said notice denied a right to appeal.

18.  Plaintiffs requested the CEO initiate an Administrative Consent Agreement allowed under Tremont Zoning Ordinance  10.3.  Plaintiffs provided proof that the factual allegations were without merit and filled out a requested occupancy permit application and met the conditions of Sec. 5.5 of Tremont Zoning Ordinance.   (unacted upon to date)

19.  On Oct. 26, 2018 Plaintiffs submitted a timely appeal to the Town to appeal to the Board of Appeals [EX 6] as permitted by Tremont Town Zoning Ordinance sec V(A).and 9.2.1.1, but the

application was denied and returned to Plaintiffs without comment. (Plaintiffs were previously denied appeal to the B.O.A. on Notice of Violation 10/19/2015.) [EX: 9(2)].

20.  Several discussions with CEO Larson followed and an Administrative Consent Agreement was drafted by the Town that required Plaintiffs to admit to 7 out of 10 allegations that were <u>frivolous and malicious and factually inaccurate</u> that violates the constitutional guarantee to free speech and redress of grievances, due process and equal protections and appears related more to retaliation than valid considerations of land use policy. Defendant CEO Larson stated that the next step would be court.

21.  The 80K enforcement action against Plaintiffs is frivolous and malicious on its face and filed to chill our rightful petition activities according to the U.S.Constitution and the Maine Constitution. The 1st Amendment guarantees the "freedom of speech" and the "right of the people... to petition the Government for redress of grievances."

22. Two members of the  Board of Selectmen  voted without making disclosure of conflict of interest on the vote to initiate court action against the Plaintiffs which violates Title 30A sec. 2605.  (McKinzie Jewitt is the wife of a defendant in Plaintiff's federal complaint (No. 1:14-cv-00515-DBH) and state actions.(No.  AP-2017-0002)  Howdy Goodwin is related to defendant Colton Sanborn in the same cases. The secretary is required to record any conflicts noted. None were recorded.

> Title 30A part 2, subpart 3, chap. 123, sec. 2605.(6) Avoidance of appearance
> of conflict of interest.  Every municipal and county official shall attempt to
> avoid the appearance of conflict of interest by disclosure or abstention.

23.  On Jan 20, 2020 The Plaintiffs filed an ANTI SLAPP Motion.  14 M.R.S. sec 556 was enacted to provide procedure for expedited dismissal of lawsuits that are brought not to address the wrong suffered by Plaintiff, but instead solely for the purpose of dissuading a defendant from

exercising his First Amendment right to petition the government, or punishing him from doing

so. Plaintiffs now file this 42 U.S.C. 1983 Complaint.

## JURISDICTION

24.   District Courts shall have original jurisdiction of all civil cases arising under the

Constitution, laws or treaties of the U.S. 28 U.S.C.A. sec 1331. (1948), 28U.S.C.A.sec. 1343
(3)(1948)


## VENUE

25.  Venue is proper in this Court pursuant to 28 U.S.C. 1391 in so far as  Defendants and

Plaintiffs acted in Hancock County, Maine.

26.  This case arises, in part, under 42 U.S.C. 1983, First Amendment to the United States

Constitution, XIV Amendment to the United States Constitution.

## BACKGROUND

27.   The corruption "in the inception" action complained herein includes numerous substantive

violations of ordinances administered by the Town of Tremont and  Town of Tremont officials,

tainted with fundamental procedural irregularity that continuously deny Fourteenth Amendment,

Equal Protection, Substantive and Procedural Due Process rights, and the 1st Amendment right

to freedom of speech. (basic right of redress of grievances) and Fifth Amendment takings clause.

28.  At a meeting on Sept. 27, 2018, Plaintiffs were presented NOTICE OF VIOLATION

(N.O.V.) and ORDER TO VIOLATIONS OF TITLE 30-A sec.3752.4. Junkyard.. Title 17 sec

2802. Miscellaneous Nuisances, and the Town of Tremont Zoning Ordinances Sec 8.1 Permit

Applicability. [EX 2]

29. The N.O.V. implicate that the Plaintiffs had no right to appeal to the board of appeals quoting

an irrelevant statute concerning an enforcement issue which is not appealable.

9.2.2.2 CEO Enforcement and Decisions states "any order, decision, or determination made, or failure to act, by the CEO in the enforcement of this ordinance is not appealable to the BOA."

"A notice of violation is merely a preliminary step that can lead to the decision by the Board Of Selectmen to initiate an enforcement action."*Eliot Shores LLC v. Town of Eliot* 9A 3d 806 (2010).

9.2.1.1 To hear and decide administrative appeals on an appellate basis where it is alleged by an aggrieved party that there is an error in any order, requirement, decision, or determination made by, or failure to act in the administration of this Ordinance.

9.2.2 Code Enforcement Officer's Decision- all Board of Appeals Code Enforcement Officer administrative decision shall be reviewed on a "de novo" basis.

30. The Town of Tremont violated Plaintiffs' due process and equal protections and right to free speech.   30-A M.R.S.A sec 2691 subsec. 4 Jurisdiction: Any Municipality establishing a board of appeals may give the board the power to hear any appeal by any person, affected directly or indirectly, from any decision, order, regulation or failure to act of any officer, board, agency or other body when an appeal is necessary, proper or required. No board may assert jurisdiction over any matter unless the municipality has by charter or ordinance specified the precise subject matter that may be appealed to the board and the official or officials whose action or nonaction may be appealed to the board. Absent an express provision in a charter or ordinance that certain decisions of its code enforcement officer or board of appeals are only advisory or may not be appealed, a notice of violation or an enforcement order by a code enforcement officer under a land use ordinance is reviewable on appeal by the board of appeals and in turn by the Superior Court under Maine Rules of Civil Procedure, Rule 80B. Any such decision that is not timely appealed is subject to the same preclusion effect as otherwise provided by law. Any board of appeals shall hear any appeal submitted to the board in accordance with Title 28-A, section 1054. (emphasis in original)

BOARD OF APPEALS ORDINANCE OF THE TOWN OF TREMONT SEC V. POWERS AND LIMITATIONS  A. The Board shall have the following powers to be exercised only upon receipt of written appeal by an aggrieved party.

1. The Board may interpret the provisions of any applicable Town Ordinance which are called into question.
5. The Board shall have the power to hear and determine appeals by any person directly or indirectly affected by the decision, action or failure to act with respect to any license, permit, variance, or other required approval, or any application therefor, including the grant, conditional grant, denial, suspension or revocation of any such license, <u>permit</u>, variance or other approval (hereinafter a "DECISION"): a. Rendered by the Code Enforcement Officer or the Planning Board pursuant to the Tremont Zoning Ordinance.

Tremont Zoning Ordinance. 9.2.1.1- To hear and decide administrative appeals on an appellate basis where it is alleged by an aggrieved party that there is an error in any order, requirement, decision, or determination made by, or failure to act in the administration of this Ordinance. 9.2.2 Code Enforcement Officer's Decision- All Board of Appeals Code Enforcement Officer administrative decisions shall be reviewed on a "de novo" basis. Tremont Zoning Ordinance (May 8, 2018)

31. THE NOTICE OF VIOLATION IS FRIVOLOUS AND MALICIOUS based upon

incorrect Findings of Fact.

**NOTICE OF VIOLATION AND ORDER TO VIOLATIONS OF TITLE 30-A sec. 3752**. 4. Junkyard, Title 17 sec. 2802 miscellaneous nuisances, and the Town of Tremont Ordinance sec. 8.1 Permit Applicability.

Findings of Fact.

1. You are the owner of property located at 45 Harbor Drive in Bass Harbor, Maine and identified on assessor's tax map 14 lot 018 and recorded in Book 4180, Page 66 and located in the residential-Business Zone.
2. On June 14, 2017, I as Code enforcement Officer for the Town of Tremont drove by 45 Harbor Drive and personally observed a section of fence removed and a car parked in a new road entrance and driveway without permits as required in Sec 8.2.1.9 of the Town of Tremont Zoning Ordinance and a tow behind camper set up as living space.
3. On June 16, 2017, I as Code Enforcement Officer for the Town of Tremont drove by 45 Harbor Drive and personally observed a tow behind camper set up living space and an accumulation of worn out or discarded items in violation of Title 30-A Junkyard sec 3752.4 and title 17 sec 2802. Miscellaneous Nuisances.
4. On February 20, 2018, I personally observed an unregistered and uninspected camper van along with an uninspected and unregistered white box truck; an unregistered and uninspected bus; an uninspected and unregistered maroon box truck and an accumulation of worn out or discarded items in violation of Title 30-A Junkyard sec. 3752.4 and Title 17 sec 2802. Miscellaneous Nuisances.

5. On June 28, 2018, I observed the tow behind camper that I observed on Feb. 20, 2018 being used as a residence without required permits as stated in Section 8.1 of the Tremont Zoning Ordinances

32. Plaintiffs provided evidence to CEO Larson before the 80K Complaint was filed that

the NOTICE OF VIOLATION Findings of Fact (#2) was factually incorrect.

2. "On June 14, 2017, I, as Code Enforcement Officer for the Town of Tremont, drove by 45 Harbor Drive and personally observed a section of fence removed and a car parked in new road entrance and driveway without permits as required in sec 8.2.1.9. of the Town of Tremont Zoning Ordinance and a tow-behind camper set up as a living space.

Plaintiffs building permit included a condition that required the removal of the <u>entire</u>

fence along Flat Iron Road to accommodate condition #2.

Condition 2. "The 6 parking spaces along Flat Iron Rd. shall be on the owner's property within the property lines and the 3 spaces in the triangle between Flat Iron Rd. and the State Rt.102A, all as depicted on exhibit D shall be maintained." [EX 4]

33. Plaintiffs provided evidence to CEO Larson before the 80K Complaint was filed

that NOTICE OF VIOLATION Findings of Fact (#3) was factually incorrect.

3. "On June 16, 2017, I, as CEO the Town of Tremont drove by 45 Harbor Dr. and personally observed a tow behind camper set up as a living space and an accumulation of worn out or discarded items in violation of 30-A Junkyard sec 3752. 4".

Junkyard is defined in 3752.4 as a yard, field, or other outside area used to store, dismantle, or otherwise handle: A. Discarded, worn out or junked plumbing, heating supplies, electronic or industrial equipment, household appliances, or furniture. B. Discarded, scrap, and junk lumber; and C. Old or scrap copper, brass, rope, rags, batteries, paper trash, rubber debris, waste and all scrap iron, steel and other scrap ferrous or nonferrous material".

There was no worn out, junked or discarded material. In contrast there are 11,000 brick,

plumbing, electric, doors, windows, 3,000 bf of tongue and groove 1 ½" flooring as well as over

$30,000 worth of commercial kitchen equipment that the Town somehow attempts to intimate

that Plaintiffs have a horrific pile of junk and that we have done nothing to abate. This is a construction sight and Plaintiffs were litigating for some sort of due process to discuss the frivolous and malicious 10/19/2015 Notice of Violation.. If the CEO observed such violations in 2017, did he not give us notice then but wait over a year? By his inaction in that regard, the CEO violates our right to timely notice of violation and associated rights of appeal, and the lack of enforcement vitiates our usage, another violation of due process by the Town against the Plaintiffs.

34. Plaintiffs provided evidence to CEO Larson before the 80K Complaint was filed that the NOTICE OF VIOLATION  Findings of Fact (# 4) was factually incorrect.

> 4. "On Feb 20 2018, I personally observed an unregistered and uninspected camper van along with an uninspected and unregistered white box truck; an unregistered and uninspected bus; an unregistered and uninspected maroon box truck and accumulation of worn out or discarded items in violation of Tit 30-A Junkyard sec. 3752. 4, And Tit 17 sec. 2802. Miscellaneous Nuisances:"

The maroon box truck is our tool truck  and was not worn out or junked. It is operational and is a functioning asset to our rebuild.  The maroon box truck (tool truck) falls under the exemption of:

> 30-A, sec 3752  1. A (8) "An area used for the parking or storage of operational commercial motor vehicles, special mobile equipment as defined in title 29-A, sec. 101 that is temporarily out of service but is expected to be used by the vehicle or equipment owner or by an operator designated by the owner. This subsection does not exempt an area used for the parking or storage of equipment that are not operational while stored or parked in the area".

The windshields were bashed out on account of a false report of a parking violation made by the Town Manager Dana Reed at a regular selectman's meeting (in abrogation of grandfathered parking) further aggravated by the the newspaper reporter, Mark Good (now  Chair of the

Tremont Planning Board, also a defendant in a defamation and libel claims in Federal District Court) stating that Plaintiffs son's trailer was "parked 'in the travel lane'".

The white box truck is and was a legally registered vehicle. [EX 8(3,4)] The bus is and was legally registered. [EX 8(1,2)] The camper van was operational and complied with sec 5.5 but was removed before the notice of violation two days after we arrived from Alaska to meet with the Town CEO in order to comply with the Town wishes...to cooperate...to no avail.

35. Plaintiffs provided evidence to CEO Larson before the 80K Complaint was filed that the NOTICE OF VIOLATION  Findings of Fact (#5) was factually incorrect.

> 5. "On June 28, 2018, I observed the tow-behind camper that I observed on Feb 20, 2018 being used as a residence without required permits as stated in Sec. 8.1 of the Tremont Zoning Ordinance".

Plaintiffs applied for an occupancy permit on Sept. 27, 2018 during a meeting with CEO Larson concerning the NOTICE OF VIOLATION [EX 2(a)]  that was addressed in the Order to Correct Violations.

> 1. Obtain after the fact permit and meet conditions of sec 5.5 of Tremont Zoning Ordinance for tow behind camper by Oct. 30, 2018.
> 2. Remove all unregistered and uninspected vehicles by Oct 30, 2018.
> 3. Remove and dispose of properly all worn out and discarded items by Oct. 30, 2018.

Sec. 5.5 of the Tremont Zoning Ordinance permits one residence per campsite. The tow-behind camper was not being used as a residence on Feb. 20, 2018. . We did apply to the CEO for an occupancy permit according to Sec 5.5 on Sep 27, 2018 as required by the CEO.   The tow-behind camper was hooked up to an authorized, inspected, and permitted subsurface sewage disposal system is not a violation according to Sec 5.5 of Tremont Zoning Ordinance.   Shortly after the Notice of Violation Plaintiffs' son moved out and the camper was sold.  The occupancy permit application was not acted upon.

Plaintiffs did not reside in the bus in 2018 as accused and therefore were not in violation of Sec 5.5.   In Jan./Feb we stayed in Town Hill, traveled to Georgia in March, upon return Robert was hospitalized until mid April; recuperated at our son's house until mid-June, flew to Alaska in July, returned to meet with CEO Larson on Sept. 27,  then flew back to our home in Alaska in November.  Plaintiffs provided evidence to disprove the allegations in the N.O.V. as well as verbal  testimony to the health conditions of Plaintiff Robert Cousins exacerbated by these events who had recently undergone open heart surgery followed a month later with an aortic abdominal aneurysm repair and was recovering and would be for at least a year.

36.  A Consent Agreement and Compliance Order was drafted by the Town in Nov. 2018 for the purpose of enforcing and resolving violations of the Town's Zoning Ordinance. Defendants had knowledge that 7 out of 10 statements were false (3,4,7,8,9,10) yet Plaintiffs were required to agree in order to be allowed to build.("Both the Landowner and the Town Agree as follows:")[EX 3a]

37.  Consent Agreement #3 is factually incorrect and the Town had knowledge of this inaccurate information before the 80K action was initiated in court.

> 3.  On Oct 18,2015 a Stop Work Order was issued by the Code Enforcement Officer because a concrete slab was poured closer to the property line in violation of Planning Board approval dated August 12, 2014 to  replace structure that was staked in the same location as the original structure.

38.  On Oct.16, 2015 a Stop Work Order was issued by the CEO Nickerson without any Notice of Violation two days after verbal permission to pour the concrete was given.

39.  The CEO was required to measure before we poured the concrete. Had she done so, any discrepancy would have been discovered and rectified if necessary.

"Conditions Placed Upon the Issuance of this Permit Ex: C. please note: Upon completion of the setting out of the structure and before any material is applied, the CEO must be notified for inspection of the structure." [EX: 5(d)] [Application dated Mar. 31, 2014]....

"At any time after you have marked the three parking spaces along Harbor Dr., call and either Carl or I will Come and take lots of pictures and measurements":. [EX 5(c) letter from CEO w enclosure of Draft Record and Notification of Decision..]

14 MRS Sec. 8104-D, 8111- **"If the landowner can show that he or she has suffered a personal injury or property damage as a result of the CEO's failure to conduct a mandatory inspection, then the CEO may be liable for negligence up to $10,000"**. A land use ordinance or statute which the CEO is required to administer or enforce states that a CEO "shall" conduct certain inspections. . .

40.  April 22, 2014 the Town of Tremont Planning Board unanimously approved the

application for building permit to rebuild "within the existing footprint." with Conditions

that did not include her setback sketch.

1.  The previous footprint and required setbacks are as depicted
    in the attached exhibits A,B,C and the first floor is defined
    by the  existing concrete pad as staked out on April 22, 2014.  [EX4(a)]

41.  CEO Nickerson based this falcious STOP WORK ORDER on an outdated setback

sketch.  This 22' setback sketch was submitted into the building permit application packet

by CEO Nickerson and was relied on by the CEO to issue the Stop-work order.  [EX 10]

She denied this at the Planning Board meeting on Oct. 25, 2015 despite the record of

document submission in the The Official Record and Notification of Decision on

4/22/2014,p.2 [EX 7]. This  sketch drawing was not a "Condition" of the permit as the

permit was conditioned on the drawings EX. A,B,C, D, [EX 4]

The Stop-Work Order appears to be contrived and a fraudulent act written without the

required fact checking.  The morning after the concrete pour Oct.16, 2015, two days after

authorization for the pour to commence, the CEO measured 7.5 ft overpour to a fence,

not the property line.. that upon publication in the MDIslander caused harm to Plaintiffs.

[see EX 11(1,2,3] (compensable business interference)

> "damages per se"associated with slander related to one's trade or business
> noting, a false accusation of dishonesty of one's business dealings carries
> with it a component of presumptive damages". *Shelling* id.

CEO Nickerson ordered Plaintiffs to halt all work and attend a planning board meeting on Oct

25, 2015. CEO Nickerson required Plaintiffs to cut 7.5 feet off a heated concrete slab by

10/31/15 without fact checking.. An expedited hearing had been requested as winter was

approaching, the foundation needed to be finished  and materials were on site ready to be

applied.

42.  On Oct. 19, 2015, three days after the issuance of the STOP WORK ORDER, CEO

Nickerson sent Plaintiffs a  ZONING ORDINANCE NOTICE OF VIOLATION that

denied Plaintiffs the opportunity to appeal to the Board of Appeals in violation of

Tremont Zoning Ordinances and due process and equal protections of the Constitutions.

[EX 9(2)]

> ZONING ORDINANCE NOTICE OF VIOLATION OCTOBER 16, 2015.

> " Dear Property Owner, It has come to my attention that your poured slab is closer
> to the property line than the **application you submitted** stated… therefor, you
> must remove the portions of the slab that are closer than the 22 ft. stated in your
> application dated March 31, 2015..
> At this time, all construction must halt until the extra section of the concrete slab
> is removed.  Your compliance by Oct. 31, 2015 is required and this decision of the
> Code Enforcement Officer can not be appealed to the Board of Appeals." [EX 9(2)]

43.  The Planning Board Decision at the 10/25/2015  meeting was "the issue is not

whether it is over or under a line but whether it is on the footprint".and several board

members and CEO Nickerson agreed to a site visit in two days at 4pm to determine the

placement of the slab. This  subsequent meeting was cancelled by  the CEO without

notice to Plaintiffs who later read about it in the newspaper.  Plaintiffs had driven the

concrete slab form stakes directly into the charred corner posts of the original building,

and was approved by the Planning Commission in our permit.

44.  Plaintiffs tried  on 10/31/15, 11/4/15, 11/15/15, 12/01/15  to get on the planning board

agenda or gain access to any tribunal authority to discuss the interpretation and application of the

frivolous and malicious Notice of Violation and Stop Work Order yet we were disallowed BOA

in abrogation of 30-A MRSA Sec. 2691. (A due process violation.).  Town Manager Dana Reed

refused declaring  court was our only option.  When Plaintiffs inquired as to how to prove the

footprint,  CEO Nickerson surreptitiously, sarcastically replied, "Bring the corners in to me". In

April 2016, when Plaintiff Robert Cousins attended a planning board meeting in April, 2016, the

Chair of the Planning Board screamed at Robert when he attempted to discuss the errant Notice

of Violation and Stop Work Order. .

45.  Months later, and now in the middle of the winter, CEO Nickerson and the Town Manager

Dana Reed finally measured the footprint requiring Plaintiffs to now cut 3 inches off the heated

concrete slab instead of the 71/2 feet she originally required to be removed by Oct. 31, 2015.

46. The actual footprint legally includes the 3 foot overhang which gave an additional 2'9".

> Zoning Ordinance Definitions.  Footprint is the entire area of ground covered by the
> structures on a lot including but not limited to cantilevered or similarly overhanging
> extensions as well as enclosed patios and decks. . EX 5(d).

47.  Plaintiffs asked to go into an Administrative Consent Agreement and avoid court over a 3

inch dispute pointing out the 2 ft. Town error in the footprint of building  [EX: 5(d)] and the

reversed property lines on the tax map [EX: 5(a) 5(b)], and there was no evidence that the owner

acted in bad faith".  The cantilevered overhang depicting the footprint was three feet wide. We

were, at least, within the legal footprint, but poured 'as staked' on the existing footprint.

Tremont Zoning Ordinance Sec. 9.(2).

2. The Town Officers, or their authorized agent are hereby authorized to enter
into an administrative consent agreement for the purpose of eliminating
violations of this Ordinance and recovering fines without Court action.
Such agreements shall not allow an illegal structure or use
to continue unless there is clear and convincing evidence that the illegal structure
or use was constructed or conducted as a result of erroneous advice given by
an authorized Town official and there is no evidence that the owner acted in
bad faith or unless the removal of the structure or use will result in a threat or hazard
to public health and safety or will result in substantial environmental damage.

48. The Town's lack of finding of fact caused this wasted time and money, and as well,
judicial economy was skewered.  The Doctrine of Exhaustion of Administrative Remedies
requires a party who seeks an administrative remedy or who challenges an administrative action
to pursue that remedy of challenge to a conclusion before the administrative agency prior to the
initiating action in the court.  *Levesque v Town of Elliot*, 448 A.2d 876, 878 (Me. 1982)
The Doctrine of Exhaustion of Administrative Remedies requires a party to proceed in the
administrative/municipal arena until all possible administrative remedies are exhausted before
initiating action in the courts.  See *Stanton v. Trustees of St. Joseph's College*, 233 A.2d 718.
724(1967).  "The principal that emerges from these cases is that when a legislative body has
made a provision by terms of statute or ordinance, for a direct means by which the decision of an
administrative body can be reviewed in a manner to afford adequate remedy, such direct remedy
is intended to be exclusive. "  "Requiring parties to litigate in court without first going through
an administrative process is contrary to the policies that we have recognized in a number of cases
in which we have held that people are aggrieved by a decision of the CEO or Planning Board
must first take their case to BOA." *Gaudette v. Davis* 2017 ME 1986

49. The Board of Appeals was established by Tremont Zoning Ordinance Pursuant to 30 MRSA

sec 2411, with jurisdiction to hear appeals from "any decision of the Planning Board or Code

Enforcement Officer......"

50. The Consent Agreement condition #4 is factually incorrect and the Town had knowledge of

this incorrect allegation before the 80K action was initiated.

> 4. The Landowner failed the thresh-hold of 30% completion in one year and
> requested extension after the one year in violation of Sec 8.8.2.

The ordinance quoted for the 30% was not in effect at the time. The controlling ordinances

passed 5/14/2013 read:

> Sec.VIII H.(2) following the issuance of a permit, if no substantial start is
> made in the construction or in the use of the property within 1 year of the date
> of the permit, the permit shall lapse and become void.

Application of material was authorized by the CEO and thus affirmed our progress was sufficient

to validate our building permit  as the ordinance in effect at the time states.The substantial start

issue was not before the CEO. see *George D. Ballard, bldr. v.. City of Westbrook*, 502 A. 2d 476,

483 (Me 1985).  Plaintiffs realized  the stop-work order issue was not  being resolved in an

expeditious or legal manner and filed for an extension of time to complete our building and not

for an extension of start time to start as the Town contends because we were already started as

recognized by the previous CEO by allowing material to be applied (concrete).

> "A request may be made to the original authorizing authority (Planning Board
> or CEO) for an extension for the start time or <u>completion time</u> of one year, but
> not to exceed two extensions" [Sec. VIII H. 4]

51. The Consent Agreement condition #5 is factually incorrect and the Town had

knowledge of this incorrect allegation before the 80K action was initiated.

> 5. The Landowner created a road opening on Flat Iron Rd. without
> required permit in violation of Sec. 8.1 and placed a camper #on lot for
> more than 90 days without required permit in violation of Sec 5.5.6 and

a bus used as a residence in violation of Sec. 5.5.3".

A "Condition" of the building permit required Plaintiffs to remove the fence:

> 2. The six parking spaces along Flat Iron Rd. shall be on the owner's property within the property line.

Plaintiffs did not reside in the bus in 2018. The CEO was apprised of the circumstances,

and yet persists in this malicious prosecution.

52. The Consent Agreement condition #7 is factually incorrect and the Town had

knowledge of this incorrect allegation before the 80K action was initiated.

> 7. The Landowner has used a bus as a residence in violation of Sec. 5.5.3 which states only one (1) recreational vehicle allowed.

> 5.5.3 states "only one recreational vehicle shall be allowed on a campsite sec. 11. Definitions. Campsite-any lot of ground within a campground intended for the occupancy by a recreational vehicle or camping unit.

The CEO was informed that Plaintiffs did not reside in the bus in 2018. Plaintiffs resided in

Town Hill, house-sitting for our son in Jan. and Feb.; traveled to Georgia in March; upon return

Robert was hospitalized until mid April; lived with another son after the first and second

surgeries; flew to Alaska in July; flew to Maine to have a meeting with CEO Larson on Sept. 27;

returned back to Alaska in November, 2018.

53. The Consent Agreement condition # 8 is factually incorrect and the Town had knowledge of

this incorrect allegation before the 80K action was initiated.

> 8. The landowner has more than 3 unregistered or uninspected vehicles on property in violation of Tit. 30A Sec 3751-3758-A.

As illustrated above, we never had three unregistered vehicles on our property. .[EX 8(1,2,3,4)]

Plaintiffs provided this information to the CEO.

54. The Consent Agreement condition # 9 is factually incorrect and the Town had knowledge of

this incorrect allegation before the 80K action was initiated.

17

9. The Town Code Enforcement Officer provided a proper notice of these violations to the Landowner. The notice of violation included a right to appeal to the Town's BOA. No appeal of the Code Enforcement Officer's order to correct the violations was filed.

55. On Oct. 26, 2018 Plaintiff did file a timely appeal to the Town of Tremont who then should have notified the Chair of the Board of Appeals.  [EX 6].  The Town returned the timely application to Plaintiffs the next day, along with the uncashed $100 check, without being acted upon effectively violating our appeal rights.

56.  The Notice of Violation did not include a right to appeal to the Town's Board of Appeals but rather said we had *no* right to appeal to the Board of Appeals.(EX 3a.b).

57.  The First Amendment of the U.S.Constitution guarantees  "freedom of speech" and "the right of the people  . .  to petition the Government for redress of grievances." U.S. Constitution. Amendment I; see U.S. Constitution,  Amend. XIV; Maine Constitution Art. 1, sec. 4;   The Consent Agreement condition # 10  requirement to drop these proper suits seemingly has nothing to do with land use issues, but rather serve to chill our constitutional right of redress of grievances and the right to free speech.

10 A.  Provide documentation that all federal and state claims against the Town of Tremont, and Tremont Fire Dept. have been dismissed".

The Plaintiffs petitioned the government for redress of grievances in Fed District Court 1:14-cv-00515 DBH (12/03/2014.) for restitution of the egregious harm done to our investment based business.  "Plaintiffs allegations are sufficient to support the necessary inference that the Town's Fire Chief had final authority to determine whether efforts should be made to suppress the fire at Plaintiff's property and that he instituted a policy not to suppress the fire.  Plaintiffs, therefor have asserted a claim against the Town."  Decision of the 1st Circuit Court of Appeals No. 15-2079.

58. On Dec 3, 2018 the Tremont Select-board unanimously passed a motion.authorizing the Code Enforcement Officer to initiate an 80K Action in Hancock County District Court even though the allegations were proven to be false by the evidence and testimony presented to CEO Larson prior to the vote. [EX B(a)].

59. The 80K Complaint violated 30A sec 2605 by not making full disclosure of pecuniary interest and voting to initiate the 80K action rendering the vote of the body voidable ab initio.

Conflict of Interest: certain proceedings of municipalities,counties, and quasi-municipal corporations and their officials are voidable and actionable according to the following provisions:1. Voting: the vote of the body is voidable when any official in an official position votes on any question in which that person has a direct or indirect pecuniary interest. 6. Avoidance of appearance of conflict of interest. Every municipal and county official shall attempt to avoid the appearance of a conflict of interest by disclosure or abstention.

(Select-board members) Ms. Jewett and Howdy Goodwin violated the above by not making full disclosure as to their relationship to Defendants in *1:14-cv-00515- DBH*). despite their recent application of sec 2605 in two board meeting in the months just prior)

60. The issues presented in the 80K Complaint are frivolous and malicious and without merit or basis in fact and is rife with fraud and deceit.

15. The Town notified Defendants of the aforementioned violations by Notices of Violation dated Aug 9, 2018, and Jan 15, 2019 (Notices attached hereto as EX: C) The Notice of Violation was received on Sept.27, 2018 not Aug 9 as claimed. [CV-19-070 80 K Complaint]

16. Despite the Town's request for Defendants to comply with the law, Defendants have failed to respond or abate the violations.[CV-19-070 80K]

17. Unless enjoined, Defendants will allow these violations to continue, to the detriment of the public health, safety and welfare. [CV-19-070 80 K Complaint]

28. The Defendants have failed and refused to abate the nuisance despite repeated requests and notices to do so. You failed to correct these violations, and therefor the Tremont Board of selectmen has engaged us to enforce this matter through legal action. This letter serves as your final opportunity to work with the Town and correct the violations."Please contact the CEO no later than Jan 31, 2019 to resolve these

violations. If you fail to contact Mr. Larson to develop a compliance plan, we will file an action in court."  [EX C(1)]

Plaintiffs did contact  CEO Larson who asked why she was calling and he told her that there was 'nothing we could do'

"On or about June 4, 2019, the Defendant filed a request for a jury trial to the Superior Court.  The Defendant's request was not docketed because they failed include the jury trial fee with their request.  On or about August 30, 2019, Defendants submitted the jury trial fee and their jury trial was docketed." Superior Court No.  CV 19-70 PLAINTIFF TOWN OF TREMONT'S OPPOSITION TO DEFENDANTS' JURY TRIAL REQUEST AND MOTION TO SPECIFY CONDUCT-FACTUAL AND PROCEDURAL BACKGROUND

61.  On May 20, 2019 parties made an initial appearance where Plaintiffs denied the

allegations and requested a jury trial yet somehow it was recorded as waived. (in pencil script)

62.  On May 30, 2019 Plaintiffs filed a Motion for Trial on the Facts by Jury  that

included the $300 filing fee that was cashed just a few days later. . And not on

Aug. 30, 2019 as Defendants claim.[EX 1(a)]

63.  On June 5, 2019 the Clerk of Court sent Plaintiffs a letter and returned our date

stamped jury trial request claiming the fee had not yet been paid.  Upon questioning, it

 was discovered that for some unknown reason the check had been recorded as two

$150.00 payments which threw it out of the system but that she would correct the error.[EX 1(b)]

64.  Plaintiffs have met the prima facie burden of establishing that the Towns' allegations

were devoid of any factual or legal support.. Plaintiffs made numerous phone calls,  flew

from Alaska, applied for permits and appeals,  provided testimony and evidence that

demonstrated compliance with the requirements of the Notice of Violation prior to the

vote by the Board of Selectmen to authorize the CEO to initiate enforcement action.  In

*U.S .v Morgan, 313 U.S. 409, 422 (1941)-(The Morgan Doctrine)* The court concluded

that "[i]f the one who determines the facts which underlie the order has not considered evidence or argument, it is manifest that the hearing has not been given." *Morgan I*   The Court said that, "if the decision maker does not review the evidence and arguments, the resulting decision is based on the decision maker's blind trust in another". " It is in the public interest that orders of administrative agencies shall not stand when they are the product of <u>sinister acts and deeds which shock the judicial conscience</u>. "The thought processes of an administrator are irrelevant in the judicial determination whether the agency order is reasonably sustained by appropriate findings and conclusions that have support in the evidence". *City of Frisco 579 S.W. 2d at 72*

## COUNT I

### 43 U.S.C. 1983 EQUAL PROTECTION VIOLATION

65. Plaintiffs restate and re-alleges allegations in paragraph 1-64.

66. The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws. A party may establish an Equal Protection violation with evidence of bad faith and malicious intent to injure. *Village of Willowbrook v Olech*. 120 S.Ct. 1073, 1074 (2000). Class of one claims arise when individuals have been victimized by state or local officials that have inequitably administered a state statute or local ordinances...a provision of governmental services. *Valparaiso University Law Review* vol.35, 1 (2000 art. 3). "The Cousins do identify instances of "personal malice and 'bad faith' retaliation". [1:14-cv-00515 DBH Doc.23 p. 10] *Tapalian v Tusino*, 377 F.3d 1, 7 (1st. Cir. 2004). "the proposed amended complaint contains many descriptions of animus towards the Cousins and Cap'n Nemo's." [id p. 11]

67.  Defendants above described actions were arbitrary, irrational and without authority under the

law, frivolous and malicious, in bad faith, and with intent to injure. The Defendants' actions were

motivated by ill-will unrelated to their official duties.  Prior to and since Plaintiffs' denials to

appeal to the Board of Appeals, other Town of Tremont residents were allowed to appeal to the

BOA under significantly similar circumstances as a comparator(s).

68.  WHEREFOR: Plaintiffs respectfully request that this Court render judgement

in his/her favor and award him/her damages, costs, compensatory, punitive

 liquidated damages, equitable and injunctive relief and whatever further relief this

court may deem appropriate considering a 100% service connected disabled combat

medical corpsman, and his family, are the victims. [Ex:

## COUNT II. DUE PROCESS VIOLATION

69.  Plaintiffs repeat and reallege the allegations contained in 1-68.

70.  The Fourteenth Amendment "forbids a state from depriving any person life, liberty or

property without due process of law." U.S. Const. Amend. XIV. Sec 1. "Procedural due process

generally requires a state to provide a person with a notice and an opportunity to be heard

before depriving that person of a property or liberty interest." " Liberty interests may not be

arbitrarily denied.  "The Due Process Clause of the Maine and Federal Constitutions guarantee

Due Process before the State deprives a citizen of a property right". *Board of Overseers of the*

*Bar v Lefebvre,* 1988 Me 24, 15, 707 A.2d 69, 73.  See also *U.S. Const. amend.* XIV, sec 1; *Me*

*Const. art. 1,* sec 6-A.

> "When assessing whether an  individual's Due Process rights have been violated we
> analyze three factors;
> [F]irst, the private interest that may be affected by the official action;
> second, the risk of erroneous deprivation of such interest through the
> procedures used, and the probable value, if any, of the additional or

substitute procedural safeguards; and finally, the Government's interest, including the function involved, in administrative burden that the additional or substitute procedural requirement would entail." *Balian v. Board of Licensure in Medicine* (1999 Me), 8, 10, 722 A.2d 364, 367 ( quoting *Mathews v Eldridge*, 424 U.S. 319, 356 (1976).

"The fundamental requirement of a due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right which the particular pertinent constitutional provision purports to protect" *McNaughton v. Kelsey,* 1997 Maine 182,698,A.2d 1049, 1052). The notice and opportunity for a hearing "must be granted in a meaningful time and in a meaningful manner." *Armstrong v Manzo,* 380 U.S. 545, 552 (1965). "At the core of the Procedural Due Process jurisprudence is the right to advance notice of a significant deprivation of liberty or property, and a meaningful opportunity to be heard prior to that deprivation". *Young v. Baker*, 2004 WL 188353 Mass Land Ct.(May 17, 2004) The state has lost out on nearly $100,000 in sales tax revenue. The Town has lost out on nearly $6000 in property taxes. Plaintiffs have lost $988,100 lost income plus a replacement cost of the restaurant and home, $475, 000.00 = $1,397,000.00 total loss due to the malicious actions of the Town of Tremont (to date, 17 Jan 2020) Sustained losses accrue for the period since that accounting was done.

72. Significantly egregious official conduct, fundamental procedural irregularities and erroneous application of the law amounted to the taking of property and the liberty interests involved without due process of law. Plaintiffs have demonstrated that the above actions have violated constitutional rights to due process and the basic right to be heard before such a take. The Magna Carta, delivered in 1215, "

provided that the sovereign should not be permitted to seize arbitrarily the lands of free men".

73. WHEREFOR: Plaintiffs respectfully request that this Court render judgement in his/her favor and award him/her damages, costs, compensatory, punitive liquidated damages, equitable and injunctive relief and whatever further relief this court may deem appropriate considering a 100% service connected disabled combat medical corpsman, and his family, are the victims. [Ex:11]

## COUNT III SUBSTANTIVE DUE PROCESS VIOLATION

74. Plaintiffs restate and re-allege allegations 1-73 above.

75. Substantive Due Process protects an individual against state actions which are arbitrary and capricious, not some humdum legal error.

76. A substantive due process implicates the essence of state action rather than the modalities; such a claim rests on perceived procedural deficiencies but on the idea that the governments' conduct, regardless of procedural swaddling, was in itself impermissible. *Amsdon v.Moran,* 904 F.2d 748 (1st Cir 1990).

77. The purpose of the Fourteenth Amendment is to prevent government from abusing its power or using it as an instrument of oppression. The ability to practice one's own chosen profession or business is a property interest under the Fourteenth Amendment. In a substantive due process analysis, it's a states affirmative act of restraining the individuals freedom that is the deprivation of liberty triggering the Protections of the Due Process Clause. Acting under color of state law, the Town has deprived Def. of that property interest without constitutionally adequate procedural process. See *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct.1148,1154,71L.ed.2d265,273(1983)   (should pay damages as compensation

for the loss of the use of his property) Liberty interest involves one's self-employment and the conduct of one's own home, business and livelihood. The property interest is also the building permit itself. Equal protection protects the denial of a right to a meaningful participation that caused an injury that is theoretically real and present...

78.  The conduct of the Defendants violated the Plaintiffs right to substantive as well as procedural due process as guaranteed by the U.S.Constitution.

79.  WHEREFOR: Plaintiffs respectfully request that this Court render judgement in his/her favor and award him/her damages, costs, compensatory, punitive liquidated damages, equitable and injunctive relief and whatever further relief this court may deem appropriate considering a 100% service connected disabled combat medical corpsman, and his family, are the victims.

## COUNT IV VIOLATION OF FREE SPEECH

80.  Plaintiffs re-states and re-alleges allegations in 1-79.

81.  The First Amendment of the U.S.Constitution guarantees  "freedom of speech" and "the right of the people  . .  to petition the Government for redress of grievances." U.S. Constitution. Amendment I; see U.S. Constitution,  Amend. XIV; Maine Constitution Art. 1, sec. 4;

82.  The Consent Agreement condition # 10  requirement to drop  suits seemingly has nothing to do with land use issues, but rather serve to chill our constitutional right of redress of grievances and the right to free speech.

83. WHEREFOR: Plaintiffs respectfully request that this Court render judgement in his/her favor and award him/her damages, costs, compensatory, punitive liquidated damages, equitable and injunctive relief and whatever further relief this court may deem appropriate considering a 100% service connected disabled combat medical corpsman, and his family, are the victims of unnecessary ultra vire malicious behavior.

## COUNT V   FIFTH AMENDMENT DE-FACTO TAKINGS

84. Plaintiffs restate and re-allege counts 1-83.

85. The Defendant fire dept's expert witness stated in his report that The Town had a "unofficial Pre-plan for that location". In *Kirkpatrick* "The Court Determined that in addition to the notice given and hearing provided in order to comply with the Due Process requirement of Art.1 sec. 6-A of the Maine Constitution and the 14th Amendment of the Federal Constitution, the city was required to provide the Kirkpatricks with a list of specific defects that render the property dangerous and a nuisance, and grant them a reasonable time to make the necessary repairs."*Leon Kirkpatrick v. City of Bangor* (Me 1999)  Plaintiffs had no notice of the condemnation of their restaurant and home..

86. The Town has stopped the rebuilding process for five years. The diminution value theory, which emphasizes the "size of the harm sustained by the claimant or the degree to which his affected property has been devalued" in determining whether government action has resulted in a taking. [[W]]hile property may be regulated to a certain extent if it goes too far it will be recognized as a taking." Justice Holmes, *Pennsylvania Coal v Mahon*,

In general, compensation must be paid when a restriction on the use of the property is so extensive that it is tantamount to confiscation of property.  *First English Evangelical*

*Church of Glendale County of Los Angeles*, 982 U.S. 304, 107 S. CT 2378, 96 L.Ed. 2nd 250 (1987).

> DEFACTO TAKING-a claim that de facto taking has occurred may arise when there has been no initiation of eminent domain proceedings, but the operation of a statute, regulation, or some other governmental activity has so restricted the use of property and reduced it's value that the private property is rendered unsuitable for any economically beneficial purpose. *Nectow v. City of Cambridge,* 277U.S. 183 (1928), *Miller v. Schoene,* 276 U.S. 272 (1928)(statute); *Village of Euclid v. Amber Realty Co.*, 272 U.S. 365 (1926)(zoning ordinance) notes 91-93 *infra* accompanying text.
> "...Direct legal restraint on its use" *Coi I*

86. Vested interests violated without due process include:

    a. Grandfathered parking all the way down Flat Iron Road (from previous owner) The Town took away our legally grandfathered parking rights on 11/20/2015. Parking had been used on Flat Iron Road long before we owned the property and was allowed from 2005-2015 under our ownership. This constitutes a 'take' without just compensation in violation of due process. This canon of construction is grounded in the purpose of the grandfather clause which is to avoid constitutional takings clauses. *Day v Town of Phippsburg,* 2015 ME 13, p. 15, 110 A.3d 645. Grandfathering clauses are "designed to strike a balance between a municipalities' interest in abolishing nonconformities and the interest of property owners in <u>maintaining land uses that were allowed when they purchased their property</u>." *Id.* In sum, grandfathering clauses such as those in the Town's Ordinances allow landownerd to continue reasonable investment-backed expectations they had when they bought their properties but they do not permit expansions or changes to nonconforming conditions indefinitely.

    b. Building permit (property right)

   c.   Stopped water delivery without notice (no appeal possible)

   d.   Unused water purification system installation and maintenance state grant

   e.   Loss of use of property for 7 years and counting.

   f.   Loss of income generated from property for 7 years and counting which also affects
retirement savings and social security benefits.

87.  WHEREFOR: Plaintiffs respectfully request that this Court render judgement in his/her

favor and award him/her damages, costs, compensatory, punitive liquidated damages, equitable

and injunctive relief, return of our grandfathered parking granted by the Selectboard to the

previous  owners as well as Plaintiffs, and whatever further relief this court may deem

appropriate considering a 100% service connected disabled combat medical corpsman, and his

family are the victims.


## COUNT VI CONTINUING VIOLATIONS DOCTRINE

88.  The Continuing Violations Doctrine allows for the inclusion of any claims regardless of the

statute of limitations so long as one constitutional violation is within the applicable

limitations period. This act is part of the same unlawful discriminitory act linked to a pattern of

actions and "more than the occurrance of isolated or sporadic acts of intentional discrimination".

These violations constitute the same type of discrimination, and involve similiar conduct by the

same individuals or entity (Town).  Therefor, we can allege causation from any time it occurred,

and the underlying facts may still be admitted as background evidence (and therefore, practically

speaking, may have the same effect as if the act was independently viable) *Morgan, 5*36 U.S.101,

122, S.Ct 2061 (2002). *Totality of Circumstances* is requisite to understand the entire picture

before making any judgment on the merits of the complaint..

89. The episode of governmental overbite complained about here is, by its very nature , ongoing. What started out as an aggressive campaign of disparaging remarks and falsities designed to damage Plaintiffs' reputation progressed to a fire, a stop work order, a notice of violation, another notice of violation, and then an 80K complaint.  The Town of Tremont has continuously employed their official powers for the purpose of injuring plaintiffs rather than to serve the proper ends of their governmental duties, abstract or hypothetical.  Class of 1 claims arise when individuals have been victimized by state or local officials that have in-equitably administered a state statute or local ordinance... *Valparaiso University Law Review* vol. 35, 1 (2000 article 3) Following is a list of the constitutional violations we have endured without cause, or substantial justification at the hands of Tremont Officials:

A. 11/20/2018 the Town drafted a "Consent Agreement" that required us to: A. Provide Documentation that all Federal and State claims against the Town and TVFD have been dismissed." [EX 3(b) ] effectively chiling our rights to petition the government.

B. 10/26/2018 A timely appeal was filed for an interpretation of the ordinance to clarify the zoning ordinance as it is applied.  The Town  returned the $100 check and timely application and denied our right to appeal without comment.  [EX 6]

C. 9/27/2018 Plaintiffs were given a N.O.V that denied appeal to the BOA.

D. Aug.17, 2018 Stated if Pl. were not working toward acquiring the necessary permit to install a structure that can this system by Aug. 30, 2018 the town will terminate payment for bottled water supply. The Town required us to get an entirely new building permit. 4/25/2018 Town Manager sent a letter  RE: Water Treatment System Installation explaining "the water treatment systems will integrate with your current water supply and plumbing"; ; Pl.  requested that the Town rescind the fraudulent stop work order which

would eliminate the need for a duplicate permit and unnecessary expensive construction.

E.  The Town violated  Due Process rights in violation of  30-A  M.R.S.A. Sec. 2691 in

refusing Pl.. appeal for N.O.V. dated 10/19/2105 [EX:9]

F.  30-A MRSA Sec 2691 Plaintiffs were denied and due process violated.

Plaintiffs  had a right to notice for violations alleged beginning in 2007.

The Town has taken  Defendant's property without just compensation. "A notice of

violation is a preliminary step that can lead to the decision by the Board of Selectmen to

initiate an enforcement action". *Eliot Shores LLC v. Town of Elliot* 9 A.3d 806 (2010)

G.  Plaintiffs filed an 80B in Ellsworth Superior Court on April 27, 2017 and requested

expedited hearing.  The Order was decided on Nov. 18, 2018  and Plaintiffs did not

receive a copy of this order until (1) day before the appeal was due.

H.  11/20/2015  Def. received a Notice from Town Manager Dana Reed that said the

trailer must be moved "immediately" or it could be "towed at your expense." referring

to the same trap trailer parked on Flat Iron Road that the Town has repeatedly had an

issue with.  Reporter Mark Good (currently the chairman of the Planning Board and a

defendant in a libel, defamation,slander complaint) reported "Move trailer or else" in the

MDIslander  on 12/5/15 claiming that we were parked partially in the travel lane.  As a

direct result of this factually inaccurate article, the tires were slashed, a shrink wrapped

boat was damaged, windows shot out with a pellet gun, and two windshields were

smashed.  The parking rights have been grandfathered and came with the rights of the

property.  Parking has been allowed without restrictions of an ordinance that prohibits

parking of a vehicle within the limits of a town road between 7 p.m. and 5 a.m. Again

the Town violates due process, and has effectively taken our grandfathered parking which

sustained our business.

I. On 10/19/2015 The CEO issued a Notice of Violation citing an irrelevant setback document that she inserted into the application. (denied by her even though the building permit submission inventory correctly attributes the submission of the errant outdated plat to the CEO. The Town refused our request for an appeal to the Board of Appeals along with the following attempts to have a chance to be heard: 10/31/15, 11/4/15,11/15/15,12/01/15 attempted to get on Pl. Board agenda. When Def. Robert Cousins finally was heard at a Pl. Board meeting 3/2016, the chair screamed at him for attempting to have his rightful due process chance to be heard.

J. Dec 4, 2013, the T.V.F.D. had an 'unofficial' plan for our location. [1:14-cv-00515-DBH Doc. 76-10- expert witness Declaration] The surround and drown contingency was a policy of the TVFD concerning Cap'n Nemo's. See [1:14-cv-55015-DBH Doc.36, #88]; " Contingency plans were discussed at meetings that stated only a defensive attack would be done should Cap'n Nemo;s catch fire (surround and drown) Only the neighboring structures were to get water applied" see [1:14-cv-50515-DBH.

Plaintiffs had a due process right to know that our property was deemed by the TVFD as a danger (Nemos) and was not going to have fire protection."The Court determined that, in addition to the notice given and a hearing provided ,in order to comply with the  Due Process  requirement of Art 1 sec 6A of the Maine Constitution and the Fourteenth Amendment to the Federal Constitution ... *Kirkpatrick* v *City of Bangor* 517 A. 2d 320 (1986)  "The Takings Clause protects property owners against interference with  their reasonable expectations." *Penn Cent. Trans. Co. v. City of New York,* 458 U.S. 104, 124 (1978) "There is no dispute that destroying the Kirkpatricks' building... affects important

private property interest that implicates due process."see *Michaud v City of Bangor*, 159

Me. 491, 494-95 (1963) *Kirkpatrick v City of Bangor* 1999 ME 73. The TVFD was

required to provide sufficient evidence to support their "pre-plan" decision and provide a

reasonable opportunity to repair. "The Bangor Fire Department issued a memorandum

stating that because of the property's deteriorated condition, in the event of a fire, the

response would be limited to protection of exposure and that no interior attack should be

undertaken" *Kirkpatrick v City of Bangor* 1999 ME 73 517 A.2d 320 (1986)  The

fundamental requirement of due process is the opportunity to be heard upon such notice

and proceedings as are adequate to safeguard the right which the particular pertinent

constitutional provision purports to protect." *McNaughton v Kelsey,* 1997 ME 182, p. 6, 698

K. 12/2013 Chief Higgins blatantly lied and stated that Def. were" violent and egged the

crowd on to be violent" during the fire on 12/04/2013 where the Town followed the pre plan

6/18/2012 Town Atty., James Collier, stated that he had watched the tapes of the last

three meetings.  Town Atty advised the board not to be biased, but to be impartial.  "Do not

let personal feelings interfere with public thoughts; there should be no personal feelings

involved and no personal agenda to grind.  Municipal officers are elected to serve the

people, you do not serve when you let personal feelings come in." [ Doc. 95, EX

12(I)Selectman Minute 6/18/12 ]

L. 6/14/12 Town Manager received an email from Chief Higgins about a trap trailer in

the road.  The Sheriff responded and determined that the trailer was parked legally

as long as the wheels were beyond the white line and there was nothing they could do about

it. [Doc. 95 EX 12(D)Selectman Meeting Minutes 6/4/12]

M. 7/08/12  Two weeks after the annual renewal for Nemo's Liquor License and special

amusement permit, Chief Higgins attempted to have the Town hold our special amusement
permit.  The Town attorney responded that "neither the town manager not the CEO had the
authority to hold up an application".[BOS Minutes]

N. 4/25/11 and 5/2/2011 Chief Higgins mischaracterized Plaintiffs in derogatory terms
and false light to poison the well of public opinion alleged during a Selectboard meeting that
we had "life safety violations" and we were not cooperating with the Fire Marshal.  He told
the Selectboard that the Fire Marshal was going to come "issue a summons' and actually
'lock  the door' and that we will 'lose it all'. [ !:14-cv-00515-DBH Doc.36#65.].  On the
contrary,  the Fire Marshal increased our occupancy limit and issued us the permit and later
stated "So to make a long story short we did not have a long list of uncorrected deficiencies
as someone stated to the MDI reporter."  [email from F.M. Hecter Cyr to head Fire Marshal
Richard  McCarthy 12/10/2013] [ Doc 36,#73, EX H]

O. 12/10/2010 Chief Higgins spread false light to the Fire Marshal saying we were '
almost  a joke', later referred to our family as a "clan of scumbags"and called to our
restaurant and  home  a "hideous fortified structure" and then claimed his puppy hit
send before he could redact his comments.[1:14-cv-00515-DBH,  Doc 95, EX
16(h)(i),(z)]

P. 7/12/2010 The Town designated a line and determined they would just not call it a bike
lane, and we could park behind the 'agreement line'.

> Old Business A. Report of Ongoing business. 1.  Flat Iron Road: See Title
> 29-A  Bike lanes not allowing bike traffic to travel on the right side requires
> Municipal Ordinance approved by Department of Public Safety and MDOT.
> At the last meeting the Board agreed to simply not call it a Bike Lane.
> [Tremont Selectman Meeting 7/12/10] Doc. 95, EX 12(E)

Q. Chief Higgins spread rumor to the head selectman and the TVFD that "Nemos was in

noncompliance of a permit and they had borrowed their fire suppression system to pass

inspection". [1:14-cv-50515-DBH Doc EX 3(1) Affid. Sarah MacQuinn]        .

"As Chairman of the Tremont Board of Selectman, I moderated meetings during which I

observed a pattern of antiganism and discord between several members/representatives

of the Tremont Volunteer Fire Dept and Robert Cousins, representing his family's

restaurant Captain Nemos.  Between 2003 and May 2009, I was present when

comments and discussions pertaining to Robert Cousins and his restaurant Captain

Nemos were made both before, during and after official meetings by certain

representatives of the Tremont Volunteer Fire Dept that demonstrated a high level

of antagonism with and clear dislike for Mr. Cousins and his establishment."

[1:14-cv-00515-DBH Doc.  EX. 1]

R. 6/10/2010 a sheriff responded to a report that we had parked our trailer on the road; The

deputy explained that once the road was painted they could park beyond the white lines.

selectmen asked the Town Manager Billings to get the road painted and to put the bike lane

on the Cousins' side of the road [ Tremont BOS Minutes 6/7/10]

S. 11/03/2008 The Selectboard voted to accept the inaccurate survey.  11/24/2008 The platt

was recorded in the Hancock Registry of Deeds.  The Town abrogated our parking by

widening the road by 18', moving the cente r line over and effectively taking 3' of parking

from our establishment that had been grandfathered.  The parking restrictions denied the

"economically viable" use of its' property in violation of the just compensation clause of

the V Amendment.


.

T. On 9/10/2007, Cap. Higgens accused Plaintiff. of being in violation of their special

amusement permit. The Town Attorney determined after a vote of 4-1 that the selectboard

determined that" we were not guilty of any violations of an amusement permit." [id at para.

45] clear if we need to make decisions whether they show up or not."1:14-cv-00515-DBH.

U. On 8/20/2007 Tremont Selectman TVFD Capt. Higgins made a motion to put us on every

agenda. "Make sure it is on the agenda, that way any night we want to talk about it we are

Plaintiffs were placed on the 8/27/07 agenda despite the fact the Town Manager was

informed that Plaintiffs were out of state.. During this meeting, Cap'n Higgins called an

executive session without Defendants  present and allowed an accuser to be present, even

though in  the past he had shown the proper protocol by waiting until the Def. was

available to  participate in the allegations against him.


## DAMAGES

90.  Plaintiffs request an end to the discrimination and compensation for the ulta vires take.  We

seek application of the same penalties sought on Plaintiffs to be applied.  Damages to Plaintiffs

are serious and severe as a result of the constant stress of dealing with the Town and the

fabrications and erroneous accusations that started in 2006 until the present 2020.

91.  Plaintiff  Robert Cousins alleged physical injury and missed work due to the Town's actions,

which are more than just claims of mental suffering and embarrassment that was not sufficient in

*Shelling v. Lindell*, 2008 ME 59, para 18, 942 A.2d 1226. Plaintiffs' claims are of a kind for

which damages may be established without mere guess or conjecture; Plaintiff Robert Cousins

made a sufficient connection between the Town's actions and his injuries to meet the burden of

establishing the *prima facie* case of actual injury. See Weintraub, para 6. The showing required

by the statute is a prima facie case, and production of some evidence is enough to satisfy this burden. *Nader* 2012 ME 57, para 33

92.  Plaintiffs averaged $1,000 a day in the last year (2013). Profit from that business was 40% of gross or $400/da X 6 years considering Cap'n Nemo's to be open 360 da/yr (as of Dec. 4, 2013) is $922,100.00 + $66,000 (440 days lost @150/da) = $988,100 lost income plus a replacement cost of the restaurant and home, $475, 000.00 = $1,397,000.00 total loss due to the actions of the Town of Tremont (to date, 17 Jan 2020) The Town of Tremont, and the State lost the sales tax of approx $95,000.00. The Town seemingly did these ultra vires harms purposefully, maliciously, and without legal cause or justification in order to punish us for redress of grievances against some of their relatives, the Town, and its fire dept.

93.  The Town wants $100/da X 4 claims retroactive, yet they have no legal claim or factual basis for such charges. Plaintiffs  request the right to reverse the charges and make fraudulent government action have consequences on an equal or trebled basis for knowingly and maliciously defrauding disabled citizens as de facto take compensation.


## CONCLUSION

94.  Plaintiffs hope that the seriousness and necessity for appeal rights to abusive N.O.V.s that could have and should have eliminated substantial continuing losses is duly recognized for what it is. What started out as an aggressive campaign of disparaging remarks and falsities designed to damage Plaintiffs' reputation progressed to a fire, a stop work order, a notice of violation with no B.O.A. appeal right, another notice of violation with yet another disclaimer to our right to appeal to the B.O.A.  returning the application and $100 check without comment, formulated a consent agreement that was unsignable by asking us agree that we had done things we had not

done, and then an 80K complaint with "equitable relief" of over $140,000. The Town of Tremont has continuously employed their official powers for the purpose of injuring plaintiffs rather than to serve the proper ends of their governmental duties.

95. The invalidation of an administrative order apart from, and regardless of, its validity as a matter of law, when measured by the standard of the substantial evidence rule requires a showing of circumstances under which it would be shocking to the judicial conscience to permit the order to stand. This requires, in turn, a showing of conditions comparable in seriousness to corruption, fraud, dishonesty, or bribery in the promulgation of the administrative order...It is in the public interest that orders of administrative agencies shall not stand when they are the product of sinister acts and deeds which shock the judicial conscience. *Carp* 388 S.W. 2d at 409

96. Defendants have met the prima facie burden of establishing corruption in the inception that the CEO's allegations are devoid of any factual or legal support. For the reasons stated above, and appropriate application of the *Morgan Doctrine I,II,III,IV*, we seek estoppel of Tremont's harassment. We also seek estoppel of the stop-work order, and repair the time to build, by enforcement of a retroactive stay of build time, and the return of our grandfathered parking rights that make our business whole and viable according to our recent investment backed business history. For every false allegation made against us, Plaintiffs pray that Defendants be fined separately for each day they have violated our constitutional rights and trebled for fraud and pay us for de facto take losses we incur due to their malicious actions against us. Robert is a 100% service connected disabled Vietnam Combat Medic.

Oct.. 24, 2020

Robert Cousins

Judy Cousins

3080 Homer Spit Rd.
Homer, Alaska 99603
bcousins.cousins@gmail.com
907-299-2818

## CERTIFICATE OF SERVICE

I, Robert L. Cousins certify that on Oct 24, 2020 , I  filed the Plaintiffs' Complaint with the

Clerk Of Court using the U.S.P.S.

I also certify that on Oct. 24, 2020 I filed this Complaint to the Defendants using the U.S.P.S.

to : Town of Tremont P.O. Box 159, Bernard, ME. 04612

   Town of Tremont  Manager Christopher Saunders P.O.Box 159, Bernard, ME 04612

   Town of Tremont Code Enforcement Officer P.O. Box 159, Bernard, ME 04612

   Town Of Tremont Board Of Selectmen McKenzie Jewitt P.O. Box 159 Bernard, ME 04612

   Town Of Tremont  Board of Selectmen Howdy Goodwin P.O. Box 159, Bernard, ME 04612

   Town of Tremont Board of Selectmen Jamie Thurlow P.O. Box 159, Bernard, ME 04612

   Town of Tremont Board of Selectmen Michael Mansillili P.O. Box 159, Bernard, ME 04612

   Town of Tremont Board of Selectmen Kevin Buck P.O. Box 159, Bernard, ME 04612

Robert L. Cousins

3080 Homer Spit Road
Homer, AK 99603
bcousins.cousins@gmail.com
967 299 2818