UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT L. COUSINS, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | 1:20-cv-00420-GZS |
| | ) | |
| TOWN OF TREMONT, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AFTER REVIEW OF PLAINTIFFS' COMPLAINT**

Plaintiffs allege that the town of Tremont (the Town) and its officials and employees deprived them of certain constitutional protections in connection with a dispute between Plaintiffs and the Town regarding the status and use of Plaintiffs' real property. (Complaint, ECF No. 1.)

Plaintiffs also filed an application to proceed in forma pauperis (ECF No. 4), which application the Court granted. (ECF No. 6.) In accordance with the in forma pauperis statute, a preliminary review of Plaintiffs' complaint is appropriate. 28 U.S.C. § 1915(e)(2). Following a review of Plaintiffs' filings, I recommend the Court dismiss the complaint.

**STANDARD OF REVIEW**

When a party is proceeding in forma pauperis, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made sua sponte prior to the issuance of process, so

as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The relevant question ... in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed in toto to render plaintiffs' entitlement to relief plausible.'" *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting T*wombly*, 550 U.S. at 569 n. 14).

Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard," *Young v. Wells Fargo, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). *See also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal standard applied to the pleadings of pro se plaintiffs "is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim").

## BACKGROUND FACTS

In December 2013, a fire destroyed Plaintiffs' restaurant and residence in the village of Bass Harbor within the town of Tremont, Maine. In April 2014, the Tremont Planning

Board approved Plaintiffs' application for a permit to rebuild within the existing footprint of the structure. (Complaint ¶ 40).

In December 2014, Plaintiffs filed a complaint in this Court against several individuals and entities, including the Town and members of the Town's fire department, related to the fire. *See Cousins v. Higgins, et al.*, No. 1:14-cv-00515-DBH. In March 2017, the Court dismissed claims against some of the defendants, and in August 2018, the Court granted summary judgment in favor of the Town and the members of the fire department. (*Cousins v. Higgins*, No. 1:14-CV-00515-DBH, 2018 WL 3186927, (D. Me. June 28, 2018), report and recommendation adopted, No. 1:14-CV-515-DBH, 2018 WL 3715703 (D. Me. Aug. 3, 2018). The First Circuit affirmed. *Cousins v. Higgins*, No. 18-1832, 2019 WL 11234276 (1st Cir. Aug. 13, 2019).

Meanwhile, in October 2015, the code enforcement officer at the time, Debbi Nickerson, issued a Stop Work Order and a Notice of Violation concerning the location of a new concrete slab relative to the property lines and the footprint of the original structure. (*Id.* ¶¶ 38–46; Notice, ECF No. 1-19; Photographs, ECF No. 1-20). That notice stated that Plaintiffs did not have the right to appeal to the Board of Appeals, but Plaintiffs attempted to raise the issue at Planning Board meetings and continued to dispute the issue with the code enforcement officer in 2015 and 2016. (Complaint ¶¶ 43–46, 89-I). In 2017, Plaintiffs challenged the decision in state court, but did not obtain relief. (*Id.* ¶ 89-G).

On September 27, 2018, Plaintiff met with the code enforcement officer, John Larson, who issued to Plaintiffs a "Notice of Violation and Order to Correct Violations of Title 30-A Junkyard" regarding Plaintiffs' property. (Complaint ¶¶ 17, 28, 31; Notice,

ECF No. 1-4). The Notice listed several specific violations which the code enforcement officer claimed to have observed between June 2017 and June 2018 and which Plaintiffs denied; the violations included the presence of worn-out or discarded items, unregistered box trucks, a new unpermitted driveway, and the use of a camper and a bus as a living space. (Complaint ¶¶ 31–35). Plaintiffs asked for an administrative consent agreement to resolve the new issues, (*id.* ¶ 18), and in October 2018, Plaintiffs filed an application for an appeal to the Board of Zoning Appeals; the application was denied. (*Id.* ¶¶ 19, 55; Application to Appeal, ECF No. 1-13.)

In November 2018, the Town drafted an administrative consent agreement. (Complaint ¶¶ 20, 36.) The agreement would have required Plaintiffs to admit several statements of fact that Plaintiffs deny. (*Id.* ¶¶ 36–37, 50–57; Consent Agreement and Compliance Order, ECF Nos. 1-5, 1-6.) Under the proposed consent agreement, in consideration for the admissions of fact, satisfactorily addressing the alleged violations, a $200 fine, and the dismissal of all federal and state claims against the Town and the Fire Department, the Town would agree to release Plaintiffs from all causes of action the Town had against them resulting from the alleged violations. (Consent Agreement and Compliance Order ¶ 10 A–H.)

On December 3, 2018, the Town's selectpersons authorized the filing of a complaint against Plaintiffs in accordance with Maine Rule of Civil Procedure 80K.[1] (*Id.* ¶ 58.) The

[1] Maine Rule of Civil Procedure 80K governs the state court process to enforce land use statutes, codes, rules and regulations.

complaint evidently was filed in state court. Plaintiffs have not alleged whether the matter remains pending or the results of the state court action.

## DISCUSSION

Plaintiffs allege (1) a procedural due process claim based on the Town's alleged taking of property without affording Plaintiffs an opportunity to be heard, (*id*. ¶ 72); (2) a substantive due process claim based on an alleged deprivation of property, (*id*. ¶ 77); (3) a first amendment claim based on the Town's requirement that Plaintiffs terminate their claims against the Town and its fire department, (*id*. ¶ 82); (4) an equal protection claim, asserting that they were deprived of the right to appeal to the Board of Appeals while other residents were permitted to appeal "under significantly similar circumstances," (*id*. ¶ 67); and (5) a taking of property without adequate compensation. (*Id*. ¶ 86.)

### A. Due Process Claims

The Fourteenth Amendment prohibits state deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This protection has both substantive and procedural components. *Amsden v. Moran*, 904 F.2d 748, 753–54 (1st Cir. 1990). In either context, "a plaintiff, as a condition precedent to stating a valid claim, must exhibit a constitutionally protected interest in life, liberty, or property." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 8 (1st Cir. 2005).

#### 1. Procedural Due Process

The procedural component of the due process guarantee "normally requires notice and an opportunity for some kind of hearing" but "[w]hether the opportunity needs to be furnished before the seizure or whether a post-seizure opportunity is sufficient depends on

the circumstances." *Herwins v. City of Revere*, 163 F.3d 15, 18 (1st Cir. 1998) (quotation omitted). Courts determine which procedural protections are required "according to a sliding scale, balancing a number of factors, including the nature of the private and public interests involved; the risk of erroneous deprivation accruing under the procedures used by the state; and the probable benefit of demanding additional procedural safeguards." *Amsden*, 904 F.2d at 753. "[I]f a state provides adequate postdeprivation remedies—either by statute or through the common-law tort remedies available in its courts—no claim of a violation of procedural due process can be brought under § 1983 against the state officials whose random and unauthorized conduct occasioned the deprivation." *Lowe v. Scott*, 959 F.2d 323, 340 (1st Cir. 1992) (summarizing *Parratt v. Taylor*, 451 U.S. 527 (1981) and *Hudson v. Palmer*, 468 U.S. 517 (1984)); *see also*, *San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 478–81 (1st Cir. 2012).

Plaintiffs have not alleged facts that would support a finding that the Town's ordinance and the state's planning and code enforcement scheme were deficient. Plaintiffs' filings establish that Plaintiffs had notice and an opportunity to contest the enforcement action the Town initiated in state court. While Plaintiffs challenge the procedure that the Town employed prior to initiating the enforcement action, Plaintiffs' failure to comply with the Town's notices and directives did not result in a loss of property without further process. Rather, even after Plaintiffs failed to address the alleged violations, Plaintiffs were afforded additional process, which included notice and an opportunity for a pre-deprivation hearing. Plaintiffs have not alleged a basis to support their contention that more process was required.

Plaintiffs' main contention is that the local officials did not follow the proper procedures according to local ordinance and state law, but when a party faults local officials for "violat[ing] or abus[ing]" the established local and state procedures, the procedural due process claims will generally fail if there is an adequate opportunity via the state courts to challenge "the alleged administrative abuses." *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 40 (1st Cir. 1992). Plaintiffs point to delays that occurred as a result of the Town's notices, but the First Circuit has rejected § 1983 procedural due process claims based on delays in the land use context when there are state remedies available, even when the delays were the result of "unauthorized intransigence and illegal demands." *Licari v. Ferruzzi*, 22 F.3d 344, 349 (1st Cir. 1994).

In sum, Plaintiffs have not alleged facts to support an actionable procedural due process claim.

**2. Substantive Due Process**

The substantive guarantee of the Due Process Clause "rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible." *Amsden*, 904 F.2d at 753. "The substantive component of the Due Process Clause is violated by executive action when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Espinoza v. Sabol*, 558 F.3d 83, 87 (1st Cir. 2009) (quotation omitted); *see also*, *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) (conduct must be "extreme and egregious," "truly outrageous, uncivilized, and intolerable," "stunning").

"In the context of land use disputes, substantive due process is a constitutional cause of action that leaves the door slightly ajar for federal relief in truly horrendous situations." *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 145 (1st Cir. 2016) (quotation omitted). Courts have consistently rejected substantive due process claims when plaintiffs merely believe local planning officials misapplied the law or reached "erroneous conclusions in bad faith." *Freeman v. Town of Hudson*, 714 F.3d 29, 40 (1st Cir. 2013). The First Circuit has explained the rationale for the high bar to federal substantive due process claims:

> Virtually every alleged legal or procedural error of a local planning authority or zoning board of appeal could be brought to a federal court on the theory that the erroneous application of state law amounted to a taking of property without due process. Neither Congress nor the courts have, to date, indicated that section 1983 should have such a reach.

*Creative Environments, Inc. v. Estabroo*k, 680 F.2d 822, 831 (1st Cir. 1982); *see also*, *Licari*, 22 F.3d at 350.

Plaintiffs allege that the Town and the code enforcement officers acted in bad faith and with malicious intent. They also allege that the issues in the enforcement action were frivolous and fraudulent. (Complaint ¶ 60.) A plausible pleading, however, must do more than rely only on "labels," "conclusions," or "formulaic recitations of the elements," free from "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Glob. Tower Assets, LLC v. Town of Rome*, 810 F.3d 77, 91 (1st Cir. 2016) ("the Applicants' vague allegations of conflicts of interest and financially motivated conspiracy do not—at least without far more—show that the Planning Board acted in the kind of conscience-shocking fashion that we require for substantive due process challenges to make it past the

gate").[2] Plaintiffs have not alleged facts that would support a claim that any of the named defendants engaged in conduct that would constitute a substantive due process deprivation.[3]

**B. First Amendment Retaliation Claim**

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in activities covered by the First Amendment. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *Powell v. Alexander*, 391 F.3d 1, 16–17 (1st Cir. 2004). "To prevail on such a claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quotation omitted).

Plaintiffs might have an actionable retaliation claim if the allegations and record demonstrated that the Town and its officials intentionally and falsely raised the local land

[2] While Plaintiffs allege some details concerning historical antagonism between members of the fire department and Plaintiffs, the allegations concerning other town officials, such as the selectpersons and town attorney, reflect that other town officials did not engage in the conduct about which Plaintiffs complained, but instead considered and attempted to address Plaintiffs' concerns. (*See* Complaint ¶¶ 89-K–Q).

[3] Plaintiffs arguably suggest that the local officials targeted their rebuild project with false accusations in order to pressure Plaintiffs to dismiss their lawsuit against the Town and the members of the fire department regarding the fire that destroyed their restaurant and home. Without more, however, that conclusion falls short of a plausible claim to relief. *See infra*, Part B. The argument is analyzed in more detail below because it is more consistent with a First Amendment claim than a substantive due process claim. *Pagan*, 448 F.3d at 33 ("Substantive due process is an inappropriate avenue of relief when the governmental conduct at issue is covered by a specific constitutional provision").

use code violations in order to pressure Plaintiffs to dismiss their lawsuit or as retribution Plaintiffs for asserting the claims against the Town and members of its fire department. *See Powell*, 391 F.3d at 17 (discussing retaliation claims invoking the protected right to petition the courts). Plaintiffs have not alleged that the Town asserted the violations in response to Plaintiffs' other lawsuit. Instead, Plaintiffs have alleged that in response to Plaintiffs' request for a consent agreement, the Town asserted it would enter into a consent agreement provided Plaintiffs dismissed their other lawsuit involving the Town. The Town's attempt to resolve all pending or potential claims involving Plaintiffs in response to Plaintiffs' request for a consent agreement would not support a retaliation claim. That is, given that the Town's proposal is alleged to have been made after the violations had been identified and communicated to Plaintiffs, given that the Town's proposal was made in response to Plaintiffs' request for a consent agreement to resolve the issues, and given that the consent agreement was proposed three years after Plaintiffs' commenced the other action and after the trial court had dismissed or granted summary judgment on all Plaintiffs' claims, the proposed consent agreement cannot reasonably be construed to reflect a retaliatory motive. The proposed agreement is thus insufficient to move Plaintiffs' First Amendment claim across "the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (quotation omitted).

**C. Equal Protection Claim**

The Fourteenth Amendment prohibits the "den[ial] to any person . . . the equal protection of the laws." U.S. Const. amend. XIV. The Fourteenth Amendment, by its terms, applies to state action. However, "the Due Process Clause of the Fifth Amendment

is treated as containing an equal protection component that binds the federal government in the same way that the Equal Protection Clause [of the Fourteenth Amendment] binds the states." *Gonzales-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 247 n.2 (1st Cir. 2012). The evaluation of an equal protection claim begins with consideration of two issues: (1) whether "the person, compared with others similarly situated, was selectively treated"; and, if so, (2) whether "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995) (quoting *Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen*, 878 F.2d 16, 21 (1st Cir. 1989)).

Courts employ "strict scrutiny" to suspect classifications such as race, alienage and national origin, "intermediate scrutiny" to gender-based classifications, and "rational basis review" to ordinary matters of commercial, tax, and economic regulation. *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 682 F.3d 1, 9 (1st Cir. 2012). When an individual alleges the government singled that person out for reasons unique to the person, rather than for the person's membership in any group, that "class of one" claim requires the individual to show that he or she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Snyder v. Gaudet*, 756 F.3d 30, 34 (1st Cir. 2014) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).

As with their substantive due process and First Amendment claims, given the applicable standard, Plaintiffs' allegations are insufficient to support an equal protection

claim in the context of local land use regulation. *Najas Realty*, 821 F.3d at 144 ("simply rehashing a First Amendment retaliation claim is not sufficient to make out a valid equal protection claim"); *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 32 (1st Cir. 1991) (rejecting equal protection claim in the land use context because it was "in effect, a recharacterization of its substantive due process claim"). "[O]nly in extreme circumstances will a land-use dispute give rise to an equal protection claim." *Torromeo v. Town Of Fremont, NH*, 438 F.3d 113, 118 (1st Cir. 2006). "[W]hether under a due process or equal protection theory, departures from administrative procedures established under state law or the denial of a permit based on reasons illegitimate under state law, do not normally amount to a violation of the developer's federal constitutional rights." *PFZ Properties*, 928 F.2d at 32; *see also*, *Pagan*, 448 F.3d at 35 ("This is a high hurdle, but its height makes eminently good sense. Otherwise, a disappointed applicant for a state or local benefit could manufacture a constitutional claim by the simple expedient of alleging differential treatment. Were that the rule, the correctness of every state or local benefit denial would become a federal case"). Plaintiffs' assertions of malice and intent to injure represent "conclusory allegations that merely parrot the relevant legal standard" and thus are not actionable. *Young*, 717 F.3d at 231.

**D. Takings Claim**

The Fifth Amendment prohibits "private property" from being "taken for public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment applies to federal actions, but "[t]hat prohibition . . . applies against the States through the Fourteenth Amendment." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160 (1980).

"When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner, regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002) (citation omitted). The Supreme Court has also recognized that even without taking physical possession, "if regulation goes too far it will be recognized as a taking." *Id.* at 326 (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).

A regulatory taking occurs "where government requires an owner to suffer a permanent physical invasion of her property," or "completely deprive[s] an owner of all economically beneficial use of her property," or demands an exaction as a condition to approving development, such as a public easement, that is disproportionate to the impact of the proposed development. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538–39, 546–48 (2005) (quotation omitted). Outside of the relatively narrow categories, when faced with a regulatory takings claim, courts employ a "more nuanced, three-pronged inquiry into (1) the extent to which the regulation interferes with the claimant's reasonable investment-backed expectations; (2) the regulation's economic impact on the property owner; and (3) the character of the government action." *Maine Educ. Ass'n Benefits Tr. v. Cioppa*, 695 F.3d 145, 153 (1st Cir. 2012) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)).

Here, the government action was allegedly initiated pursuant to ordinances governing storage of discarded items, unregistered vehicles, occupancy of temporary living quarters, and building footprints and permits. None of the three factors outlined by the

Supreme Court suggests that ordinary local land use regulations will give rise to a takings claim. *Compare to, Hodel v. Irving*, 481 U.S. 704, 716 (1987) (finding a taking of property when the regulation was "extraordinary" because it abrogated one of the oldest and most fundamental property rights, the right to transfer property to heirs). In addition, to the extent Plaintiffs believe the town officials used the regulations and notices as a pretext to interfere with Plaintiffs' efforts to rebuild their home and restaurant, Plaintiffs have not alleged any facts to support such a claim. Plaintiffs' conclusory allegations regarding the officials' motives fails to state a plausible regulatory takings claim for the same reasons their due process, First Amendment, and equal protection claims fail. *See supra*.[4]

## CONCLUSION

Based on the foregoing analysis, after a review in accordance with 28 U.S.C. § 1915, I recommend the Court dismiss the complaint.

## NOTICE

> A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

[4] Plaintiffs also assert a takings claim based on the November 2015 notice requiring Plaintiffs to move a trailer that was parked alongside a fence bordering one of the roads adjacent to their property and which trailer the Town asserted was partially in the travel lane. (*See* Complaint ¶¶ 32, 34, 51, 86-A, 89-H). Plaintiffs evidently do not agree with the code enforcement officer that the trailer was in the roadway. Plaintiffs also allege their 2014 building permit included a condition that Plaintiffs remove the fence and that any parking occur inside their property line. Plaintiffs allege, therefore, that the Town's notice was not an attempt to revoke Plaintiffs' right to park adjacent to the road, but rather represents the Town's communication to Plaintiffs that they were exceeding the limits of their parking rights and the conditions of the building permit. The essence of that taking claim, therefore, is that the Town erroneously concluded that a regulatory violation was occurring. The factual dispute alleged does not support a takings claim.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 4th day of March, 2021.